**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DAVID HARPER,
  *Plaintiff-Appellee,*

  v.

MICHAEL D. NEDD, Deputy
Director; KEVIN T. GRAHAM, Chief,
  *Defendants-Appellants,*

  and

U.S. DEPARTMENT OF THE
INTERIOR; DEB HAALAND,
  *Defendants.*

No. 22-35036

D.C. No.
1:21-cv-00197-
CRK

OPINION

Appeal from the United States District Court
for the District of Idaho
Claire R. Kelly, International Trade Judge, Presiding

Argued and Submitted March 29, 2023
University of Idaho, Moscow

Filed June 26, 2023

Before:  Richard C. Tallman, Ryan D. Nelson, and Danielle
J. Forrest, Circuit Judges.

Opinion by Judge R. Nelson

# SUMMARY[*]

## Civil Rights/*Bivens*

In an interlocutory appeal, the panel reversed the district court's denial of defendants' motion to dismiss an action alleging due process violations and seeking damages pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

David Harper, a former Bureau of Land Management ("BLM") Law Enforcement Ranger in Idaho, challenged adverse employment actions taken against him by the Department of the Interior and BLM officials. He sued defendants alleging a violation of his Fifth Amendment right to due process.

The panel held that Harper had no claim for money damages under *Bivens*. Citing *Egbert v. Boule*, 142 S. Ct. 1793 (2022), the panel stated that the Supreme Court means what it says: *Bivens* claims are limited to the three contexts the Court has previously recognized and are not to be extended unless the Judiciary is better suited than Congress to provide a remedy. Here, Harper's claims arose in a different context than what the Court has recognized. Congress has also already provided a remedy in this context under the Civil Service Reform Act of 1978. Because this case involves an alternative remedial structure, this case exists in a novel context outside the preexisting *Bivens* framework. Extending *Bivens* here would risk impermissible intrusion into the functioning of both the Legislative and Executive Branches.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Dana L. Kaersvang (argued) and Barbara L. Herwig, Appellate Staff Attorneys; Peter L. Wucetich, Assistant United States Attorney; Joshua D. Hurwit, United States Attorney; Brian M. Boynton, Principal Deputy Assistant Attorney General; United States Department of Justice; Washington, D.C.; for Defendants-Appellants.

Randolph B. Neal (argued), Law Office of Randolph B. Neal, Idaho Falls, Idaho, for Plaintiff-Appellee.

**OPINION**

R. NELSON, Circuit Judge:

We assess a Fifth Amendment *Bivens* action given *Egbert v. Boule*, 142 S. Ct. 1793 (2022). The Supreme Court means what it says: *Bivens* claims are limited to the three contexts the Court has previously recognized and are not to be extended unless the Judiciary is better suited than Congress to provide a remedy. Here, David Harper's claims arise in a different context than what the Court has recognized. Congress has also already provided a remedy in this context under the Civil Service Reform Act of 1978. As such, we reverse the district court's expansion of *Bivens* and remand for proceedings consistent with this opinion.

I

Harper, a former Bureau of Land Management (BLM) Law Enforcement Ranger in Idaho, challenges adverse employment actions taken against him by the Department of the Interior (DOI) and BLM officials. In 2018, a DOI Office

of the Inspector General (OIG) special agent interviewed Harper regarding allegations that a BLM manager had engaged in sexual harassment. Harper first denied that the alleged conduct occurred. But upon further questioning, Harper backtracked, acknowledging that the manager had sent him "some joking text messages," including sexual animations.

Based on the OIG interview, Harper was found to have a "lack of candor." Harper alleges that he was never told he lacked candor, and the OIG never investigated him further in connection with his interview responses. Harper attributes the "lack of candor" finding to Kevin Graham, a BLM human relations advisor. Graham at first recommended suspending Harper for 14 days but later recommended removal. Graham allegedly instructed BLM officials to adopt both recommendations. The BLM suspended Harper for 14 days without pay for serious misconduct and permanently reassigned him to a non-law enforcement position.

Harper appealed this adverse decision to the BLM's Idaho State Director (Director). The Director appointed an investigator, who concluded that there was "no credible evidence to sustain the charge of lack of candor." Before the Director issued his decision, Michael Nedd—BLM's Deputy Director of Operations—allegedly stepped in and upheld the reassignment, but noted Harper could apply for future law enforcement vacancies. Harper then requested review by DOI human resource officials who found that BLM had followed the appropriate processes.

Harper later applied for another BLM law enforcement ranger position in Idaho and received a tentative offer, but the offer was rescinded. Harper alleges that Nedd and

Graham directly intervened to prevent his hiring. Harper has also unsuccessfully applied to other similar law enforcement positions.

Harper sued Nedd and Graham, asserting a violation of his Fifth Amendment right to due process and seeking damages under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Defendants moved to dismiss, arguing that Harper had no *Bivens* claim and that Defendants were entitled to qualified immunity. The district court rejected Defendants' *Bivens* challenge and denied qualified immunity. We now address Graham and Nedd's interlocutory appeal "because the existence of the cause of action is an antecedent legal question defining the claim, and it is directly implicated by the defense of qualified immunity." *Mejia v. Miller*, 61 F.4th 663, 665 (9th Cir. 2023) (internal citation omitted).

## II

We have jurisdiction under 28 U.S.C. § 1291. *See Pettibone v. Russell*, 59 F.4th 449, 452 (9th Cir. 2023). We review the district court's decision on a motion to dismiss de novo. *Fayer v. Vaughn*, 649 F.3d 1061, 1063–64 (9th Cir. 2011) (per curiam). "A motion to dismiss will only be granted if the complaint fails to allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 1064 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations are accepted as true and pleadings are construed in the light most favorable to the non-moving party. *Id.* But "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.* (quoting *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)).

## III

We conclude Harper has no claim for damages under *Bivens*.

## A

Under 42 U.S.C. § 1983, plaintiffs may sue state officials acting under the color of state law for money damages for violating the constitution. No federal statute, however, extends a cause of action against federal officials.

Fifty years ago, in *Bivens*, the Supreme Court held that the plaintiff had an *implied* cause of action for damages against federal officials for a Fourth Amendment unreasonable search and seizure. 403 U.S. at 396–97. Following *Bivens*, the Court recognized just two other types of implied damages claims under the Constitution. In *Davis v. Passman*, it applied *Bivens* to a former congressional staffer's gender-based employment discrimination claim under the Fifth Amendment's Due Process Clause. 442 U.S. 228, 248–49 (1979). And it did so in *Carlson v. Green*, recognizing an Eighth Amendment claim against federal prison officials for failing to treat a prisoner's severe asthma. 446 U.S. 14, 16 n.1., 19 (1980). The Supreme Court has never recognized another *Bivens* claim in the last 43 years.

Post-*Carlson*, expanding *Bivens* to any other contexts became a "disfavored judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (internal quotation marks and citation omitted). Since *Carlson*, the Court has consistently refused to extend *Bivens* in the twelve times the issue has come before it. *See Tate v. Harmon*, 54 F.4th 839, 843 (4th Cir. 2022). And in the past six years alone, the Court has issued three opinions reinforcing a bar to expanding *Bivens*, explaining that it has "come to appreciate more fully the

tension between judicially created causes of action and the Constitution's separation of legislative and judicial power." *Egbert*, 142 S. Ct. at 1803 (cleaned up); *see also Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020); *Ziglar*, 137 S. Ct. at 1857.

This recent trilogy of cases is instructive. We must apply a two-step framework, asking first whether the claim arises in a new context, and second, if so, whether other special factors counsel hesitation against extending *Bivens*. *Hernandez*, 140 S. Ct. at 743; *see Ziglar*, 137 S. Ct. at 1859–60.

As to the first step, the Supreme Court has articulated a broad understanding of whether a context is new. *Hernandez*, 140 S. Ct. at 743. If the case is "different in a meaningful way" from the Court's three previous *Bivens* cases, then the context is "new." *Id.*

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 137 S. Ct. at 1860. In contrast, step two's "special factors" inquiry is not governed by "an exhaustive list," but

concerns whether Congress might disapprove of creating the new damages remedy and whether the Judiciary is well suited, absent congressional direction, to weigh the costs and benefits of allowing a damages action to proceed. *Hernandez*, 140 S. Ct. at 743.

*Egbert*—issued after the district court's decision below—further clarified that these two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 142 S. Ct. at 1803. "[I]f there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate,'" or "even if there is the '*potential*' for such consequences, a court cannot afford a plaintiff a *Bivens* remedy." *Id.* at 1805 (emphasis original) (first quoting *United States v. Stanley*, 483 U.S. 669, 681 (1987); and then quoting *Ziglar*, 137 S. Ct. at 1859–60, 1864–65).

We have addressed the *Bivens* question post-*Egbert* and similarly declined to extend *Bivens* to a new cause of action. *See, e.g.*, *Mejia*, 61 F.4th at 669; *Pettibone*, 59 F.4th at 456–57. In *Mejia*, we held that a Fourth Amendment excessive force claim brought under the Federal Tort Claims Act against a BLM officer presented a new *Bivens* context in part because, as here, the BLM official constituted a new category of defendants. 61 F.4th at 668–69. In so doing, we referenced the Supreme Court's decision in *Wilkie v. Robbins*, 551 U.S. 537 (2007), which previously declined to extend *Bivens* to a due process claim against a BLM official. *Mejia*, 61 F.4th at 668. In *Wilkie*, the Supreme Court noted that Congress was better suited to evaluate the effect of "'a new species of litigation' against those who act on the public's behalf." 551 U.S. at 562. Applying this logic in *Mejia*, we concluded that "given this new context, special

factors counsel against implying a cause of action here" because there would be "'systemwide consequences' for BLM's mandate to maintain order on federal lands, and uncertainty about these consequences provides a reason not to imply such a cause of action." 61 F.4th at 668–69 (cleaned up) (quoting *Egbert*, 142 S. Ct. at 1803–04).

In *Pettibone* we found that the plaintiff's Fourth Amendment *Bivens* claim presented a new context because "the rank of the officers involved; . . . the generality or specificity of the official action; . . . the statutory or other legal mandate under which the officer was operating; [and] the risk of disruptive intrusion by the Judiciary into the functioning of other branches" all presented different dimensions apart from the Fourth Amendment claim in *Bivens*. 59 F.4th at 455 (alterations in original) (quoting *Ziglar*, 137 S. Ct. at 1859–60). We held that the plaintiff's claim presented a new context, even though it was a Fourth Amendment claim like in *Bivens*. *See id. Bivens* concerned agents of the Federal Bureau of Narcotics who, without a warrant, "entered [Bivens's] apartment[,] . . . manacled [him] in front of his wife and children, and threatened to arrest the entire family" before "search[ing] the apartment from stem to stern." 403 U.S. at 389. In contrast, in *Pettibone*, Russell, a high-level supervisor of the Federal Protective Service, was of a different rank than the federal narcotics agents in *Bivens*, and Russell's alleged "ordering or acquiescing in unconstitutional conduct, took place at a higher level of generality than the actions of the agents in *Bivens*, who personally seized Bivens and searched his apartment." 59 F.4th at 455.

We also held that directing a multi-agency operation to protect federal property involved a different legal mandate than in *Bivens*. *Id.* And since Russell was carrying out an

executive order, there was a greater "risk of disruptive intrusion by the Judiciary into the functioning of other branches" than in *Bivens*. *Id.* (quoting *Ziglar*, 137 S. Ct. at 1860). These distinctions were "more than sufficient to make this a new *Bivens* context," and thus we did not expand *Bivens*. *Id.*

## B

With this background in mind, we decline to extend *Bivens* here. This case presents both a meaningfully different context than past *Bivens* cases, and several factors signal that Congress, not the Judiciary, is better suited to formulate a damages remedy.

## 1

Harper argues that his claim does not present a new context because it arises under the Fifth Amendment's Due Process Clause and is indistinguishable from the claim in *Davis*. But as even the district court noted, this case "can be said to arise in a new context." *Harper v. U.S. Dep't of the Interior*, 571 F. Supp. 3d 1147, 1164 n.7 (D. Idaho 2021). We agree with this part of the district court's analysis.

The Supreme Court has identified that "a case that involves 'a new category of defendants'" presents a new context. *Egbert*, 142 S. Ct. at 1803 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). The defendant in *Davis* was a United States Congressman. 442 U.S. at 230. Applying a case about an elected official within the Legislative Branch to BLM employees within the Executive Branch would expand *Davis* to a new category of defendants.

Moreover, additional factors, such as "the statutory or other legal mandate under which the officer was operating"

further show that this case presents a new *Bivens* context. *Ziglar*, 137 S. Ct. at 1860. This case involves an internal Executive Branch employment dispute governed by a separate legal mandate, the Civil Service Reform Act of 1978 (CSRA), Pub. L. 95-454, 92 Stat. 1111 (1978) (codified in various sections of 5 U.S.C.). No such framework existed in *Davis*. 442 U.S. at 231, 247.

The CSRA establishes detailed procedures governing federal employee discipline, including methods by which employees may challenge adverse disciplinary actions. Serious adverse employment actions may generally be appealed to the Merit Systems Protection Board (MSPB), with judicial review of those decisions available in federal court. *See* 5 U.S.C. §§ 7512, 7513(d), 7703(b)(1). For less severe personnel actions, employees may seek corrective action from the Office of Special Counsel. *See* 5 U.S.C. § 1214(a)(3). The DOI also has its own internal grievance procedures for personnel actions outside of MSPB jurisdiction.

Because this case involves an alternative remedial structure, this case exists in a novel context outside the preexisting *Bivens* framework.[1]

---

[1] Harper alleges that Defendants conspired to deprive him of an appeal to the MSPB. But Harper requested a review from DOI human resource officials, who separately found that BLM had followed the appropriate processes, and Harper does not allege any involvement of Defendants or impropriety on the part of DOI human resources in reaching that finding. Therefore, even accepting as true Harper's allegation that Defendants' conduct was aimed to deprive him of CRSA procedures, Harper still benefitted from an existing alternative remedial scheme.

2

We next examine whether, given that this case arises in another context, any factors counsel against expanding *Bivens*. Again, the Supreme Court has instructed that such an expansion is a "disfavored judicial activity." *Ziglar*, 137 S. Ct. at 1857 (internal quotation marks and citation omitted). We conclude that no other factors warrant recognizing a new *Bivens* action.

"Under *Egbert*, rarely if ever is the Judiciary equally suited as Congress to extend *Bivens* even modestly." *Mejia*, 61 F.4th at 669. That is because "[t]he creation of a new cause of action is inherently legislative, not adjudicative." *Id.* Essentially then, future extensions of *Bivens* are dead on arrival. This case presents no exception. Extending *Bivens* here risks impermissible intrusion into the functioning of both the Legislative and Executive Branches. As discussed, the CSRA guides the Executive Branch in addressing disciplinary disputes. Because Congress passed the CSRA to achieve these goals, extending *Bivens* to allow government employees to sue their supervisors for damages over disciplinary actions would significantly intrude into those functions. We decline Harper's invitation to do so.

The district court found that the CSRA did not foreclose Harper's *Bivens* claim because he alleged that Defendants took "*ultra vires* actions" that "corrupted" the CSRA process and violated his Fifth Amendment rights. *Harper*, 571 F. Supp. 3d at 1163, 1166. According to the district court, Harper's claims were distinguishable from case law refusing to extend *Bivens* in the context of the CSRA because the "sole purpose and effect" of Defendants' alleged actions "was to obstruct the legitimate procedures for appealing personnel actions set forth in the CSRA." *Id.* at 1166. The

district court reasoned that it was "doubtful that Congress intentionally chose to leave plaintiffs in Harper's position without a remedy." *Id.*

But both *Egbert* and our case law establish that this was the wrong framing. Under *Egbert*, "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" 142 S. Ct. at 1804 (quoting *Ziglar*, 137 S. Ct. at 1858). Here, "the relevant question is not . . . whether the court should provide for a wrong that would otherwise go unredressed." *Id.* Our proper inquiry is whether the Judiciary, "rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy." *Id.* (quotation marks and citation omitted). Indeed, "the CSRA precludes even those *Bivens* claims for which the act prescribes no alternative remedy." *Saul v. United States*, 928 F.2d 829, 840 (9th Cir. 1991).

Here, as in *Egbert*, Congress has provided alternative remedies for aggrieved individuals like Harper. *See, e.g.*, 5 U.S.C. §§ 1214(a)(3), 7512–13(d), 7703(b)(1). Harper pursued this alternative remedial scheme. Specifically, Harper appealed his reassignment to the MSPB, albeit his appeal was rejected for lack of jurisdiction; the BLM Idaho State Director investigated after he filed an administrative grievance; and, after his grievance was denied, Harper sought Department-level review and DOI's Chief Human Capital Officer determined that he received all process available to him and that BLM had followed all the appropriate procedures in handling his case. Harper asserts that in removing him from his law enforcement role, Defendants gave him a slight raise to avoid MSPB jurisdiction. Regardless of whether this was Defendants'

intent, extending *Bivens* to such a context would undermine Congress's apparent determination that the level of discipline Harper received was not severe enough to warrant further protections. Thus, "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1807.

Congress is better suited to determine appropriate remedies here, as it has already done so in the CSRA. No doubt Harper desires greater remedies; but CSRA remedies are what Congress established. We do not second guess Congress's determination.[2] *See Saul*, 928 F.2d at 840. Indeed, we have held that "[t]he CSRA's comprehensive remedial provisions convince us that there was no inadvertence by Congress in omitting a damages remedy against supervisors whose work-related actions allegedly violate a subordinate's constitutional rights." *Id.* And under *Egbert*, "[a] court faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" 142 S. Ct. at 1805 (quoting *Ziglar*, 137 S. Ct. at 1858) (emphasis in original). The CRSA provides that rational reason.

---

[2] Harper also suggests that his *Bivens* claim should survive because his complaint sought equitable relief. But we have "distinguished between damages actions against individuals under *Bivens* and actions for injunctive relief against the United States or its officers in their official capacity." *Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th Cir. 2016). "By definition, *Bivens* suits are individual capacity suits and thus cannot enjoin official government action." *Id*.

## IV

Harper's claims arise in a different context than the limited and narrow *Bivens* actions recognized by the Supreme Court decades ago. And Congress has already provided, and is better suited to address, remedies for Harper's claims here. Thus, we decline to extend *Bivens*; Harper has no *Bivens* cause of action.[3]

**REVERSED AND REMANDED.**

---

[3] Because we find Harper's *Bivens* claim foreclosed, we need not address whether Graham and Nedd are entitled to qualified immunity.