**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROSCOE CHAMBERS,

*Plaintiff-Appellant*,

v.

C. HERRERA, Special Housing Unit Lieutenant, individual and official capacity; E. VELEZ, individual; MARY M. MITCHELL, in her individual capacity; D. MILLER, in his individual capacity; RAGOSA, in her individual capacity; A. MARTIN, S.I. Officer in his individual capacity; JOSE ESQUITINI, Physician Assistant; E. PEREZ,

*Defendants-Appellees*,

and

BRAUN, individual; CHRISMAN, individual; M. MITCHELL, Western Regional Director, official capacity; CLARK, in his individual capacity; STEVEN LAKE,

*Defendants*.

No. 20-55004

D.C. No.
5:17-cv-02564-
MWF-KES

OPINION

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted February 8, 2023
San Francisco, California

Filed August 15, 2023

Before:  Jay S. Bybee and Ryan D. Nelson, Circuit Judges,
and Jed S. Rakoff,[*] District Judge.

Opinion by Judge R. Nelson

## SUMMARY[**]

### *Bivens*/Prisoner Civil Rights

The panel affirmed in part, reversed in part, and vacated
in part the district court's order dismissing for failure to state
a claim a federal prisoner's First and Eighth Amendment
claims brought under *Bivens v. Six Unknown Named Agents
of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971),
and remanded.

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the
Southern District of New York, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

In evaluating plaintiff's claims, the panel applied the two-part framework set forth in Z*iglar v. Abbasi*, 582 U.S. 120 (2017), and *Hernandez v. Mesa*, 140 S. Ct. 735 (2020), asking first whether the claim arose in a new context, and second, if so, whether other special factors counseled hesitation against the extension of *Bivens*.

Affirming the dismissal of the First Amendment retaliation claim, the panel agreed with plaintiff that the Supreme Court's decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), explicitly disavowed any *Bivens* claims based on First Amendment retaliation.

The panel held that plaintiff's Eighth Amendment failure to protect claim failed to state a claim under *Egbert* because: (1) the claim represented a new *Bivens* context, noting that no case has extended *Bivens* to claims that Bureau of Prisons employees violated the Eighth Amendment by failing to protect an inmate from other staff members; and (2) Congress was better suited than the Judiciary to construct a damages remedy. The panel held that plaintiff's Eighth Amendment excessive force claim similarly failed under *Bivens*, but dismissal of that claim should be with prejudice because even plausible allegations could not constitute a *Bivens* claim for excessive force under *Egbert* and amendment would be futile.

Addressing plaintiff's Eighth Amendment claim for medical indifference, the panel determined that it was unclear whether the *Bivens* claim was viable because plaintiff failed to allege any facts about his injuries, examination, or treatment. The panel remanded the claim for the district court to consider whether plaintiff, proceeding pro se, should be allowed to amend his complaint and the potential merits of any amended claim.

## COUNSEL

Christine Hanon (argued), Emily Dennis, and Abigail Miles, Certified Law Students; Carter White, Supervising Attorney; UC Davis Civil Rights Clinic, Davis, California; for Plaintiff-Appellant.

Margaret M. Chen (argued), Assistant United States Attorney; David M. Harris, Assistant United States Attorney, Civil Division Chief; Tracy L. Wilkison, United States Attorney; United States Attorney's Office, Los Angeles, California; for Defendants-Appellees.

## OPINION

R. NELSON, Circuit Judge:

We once again grapple with *Bivens*. Under *Egbert v. Boule*, 142 S. Ct. 1793 (2022), most claims seeking to expand *Bivens* are "dead on arrival." *Harper v. Nedd*, 71 F.4th 1181, 1187 (9th Cir. 2023). For all but one claim, this case presents no reason to depart from our presumption. We agree with the district court that Roscoe Chambers failed to state a *Bivens* claim under the Eighth Amendment for medical indifference. But we remand for the district court to consider whether, as a pro se plaintiff, Chambers should be allowed to amend his complaint. While perhaps unlikely, it is not impossible that he could plead a viable claim.

I

Roscoe Chambers appeals the district court's order dismissing his First and Eighth Amendment claims brought under *Bivens v. Six Unknown Named Agents of the Federal*

*Bureau of Narcotics*, 403 U.S. 388 (1971). During the relevant period, Chambers was a federal prisoner. Chambers alleges that he faced harassment, retaliation, and physical harm. Relevant here, he alleges that prison officer Lieutenant Carmen Herrera repeatedly threatened him, denied him law library access, and assaulted him several times, causing a broken arm and wrist. Chambers also alleges that physician's assistant Jose Esquetini refused to treat his broken bones or take x-rays for six weeks to cover up Herrera's assaults. Chambers asserts that he was then assaulted by Officer Enrique Velez, who allegedly sprayed him in the mouth and face with mace.

Chambers allegedly attempted to file a BOP-10[1] grievance form. Chambers claims his complaints were dismissed and prison staff punished him by filing false incident reports and placing him in the Special Housing Unit.

Chambers then filed a *Bivens* action asserting claims for retaliation in violation of the First Amendment and failure to protect, excessive force, and medical indifference claims in violation of the Eighth Amendment. Defendants moved to dismiss, arguing that Chambers did not state a cognizable *Bivens* claim and, alternatively, that the defendants were entitled to qualified immunity. The district court adopted the magistrate judge's recommendation that Chambers' complaint be dismissed, including, as relevant here, that his Eighth Amendment excessive force and deliberate

---

[1] Under the BOP grievance procedure, an inmate may file a BOP-10 form if an initial complaint is not formally rejected but the inmate is not satisfied with the Warden's response. *See*, *e.g.*, FED. BUREAU OF PRISONS, U.S. DEP'T OF JUSTICE, PROGRAM STATEMENT NO. 1330.18, ADMINISTRATIVE REMEDY PROGRAM (Jan. 6, 2014), available at https://www.bop.gov/policy/progstat/1330_018.pdf.

indifference claims be dismissed with leave to amend and his other *Bivens* claims be dismissed without leave. *See Chambers v. Herrera*, 2019 WL 4391135, at \*10 (C.D. Cal. July 9, 2019), *report and recommendation adopted*, 2019 WL 5413883 (C.D. Cal. Aug. 29, 2019). Chambers declined to amend, so the district court entered final judgment dismissing his complaint. Chambers now seeks this appeal.

## II

We have jurisdiction under 28 U.S.C. § 1291. *See Pettibone v. Russell*, 59 F.4th 449, 452 (9th Cir. 2023). And we review motions to dismiss de novo. *Fayer v. Vaughn*, 649 F.3d 1061, 1063–64 (9th Cir. 2011) (per curiam). "A motion to dismiss will only be granted if the complaint fails to allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 1064 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the petitioner is *pro se*, particularly in civil rights cases," a court must "construe the pleadings liberally" and "afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (internal quotation marks omitted).

## III

*Bivens* is far from the road less traveled. The Supreme Court 50 years ago recognized an implicit cause of action against federal officials under the Fourth Amendment in *Bivens* and extended *Bivens*'s implied cause of action under the Fifth Amendment and Eighth Amendment. *See* 403 U.S. at 388 (Fourth Amendment); *Davis v. Passman*, 442 U.S. 228, 248–49 (1979) (Fifth Amendment); *Carlson v. Green*, 446 U.S. 14, 19 (1980) (Eighth Amendment). Over the last 40 years, the Court has been invited, and refused, to extend *Bivens* twelve times. *See Harper v. Nedd*, 71 F.4th 1181,

1185 (9th Cir. 2023) (internal citation omitted). The Court categorized extending *Bivens* as a "disfavored judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (internal quotation marks omitted). And the Court recently issued a trilogy of cases reinforcing said disfavor. *See Egbert v. Boule*, 142 S. Ct. 1793, 1798–99 (2022); *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020); *Ziglar*, 582 U.S. at 135.

The Court clarified the framework we must apply to evaluate *Bivens* claims. Under *Ziglar* and *Hernandez*, we apply a two-part framework, asking first whether the claim arises in a new context, and second, if so, whether other special factors counsel hesitation against the extension of *Bivens*. *Hernandez*, 140 S. Ct. at 743; *Ziglar*, 582 U.S. at 136–39. A *Bivens* action may constitute a new context depending on, for example:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 582 U.S. at 140.

Ultimately, the Court has noted that "if there is any reason to think that 'judicial intrusion' into a given field

might be 'harmful' or 'inappropriate,'" or "even if there is the 'potential' for such consequences, a court cannot afford a plaintiff a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1805 (citations omitted). Thus, post-*Egbert* we first examine whether this case presents a new *Bivens* context and, if so, whether Congress is better equipped to create a damages remedy. *See id.* at 1803.

Heeding the Court's guidance, we have similarly declined to extend *Bivens* to any new contexts. *See*, *e.g.*, *Harper*, 71 F.4th at 1187; *Pettibone*, 59 F.4th at 455; *Mejia v. Miller*, 61 F.4th 663, 669 (9th Cir. 2023). This includes cases in which the *Bivens* claim was brought under "parallel circumstances" to previously recognized *Bivens* cases. *Egbert*, 142 S. Ct. at 1809; *see also Harper*, 71 F.4th at 1187 (finding new *Bivens* context in Fifth Amendment due process claim because claim involved a new category of defendants and alternative remedial scheme); *Pettibone*, 59 F.4th at 455 (same in *Bivens* claim brought under the Fourth Amendment because claim involved officers of a different rank and distinguishable official action and legal mandate); *Mejia*, 61 F.4th at 668 (same in Fourth Amendment excessive force claim because case involved new category of defendants). In each of these cases we concluded that Congress, not the Judiciary, was better suited to fashioning damages remedies. "Essentially then, future extensions of *Bivens* are dead on arrival." *Harper*, 71 F.4th at 1187.

## IV

We examine each of Chambers' *Bivens* claims in turn.

## A

We first address Chambers' First Amendment retaliation claim. Chambers concedes that the Supreme Court's

decision in *Egbert* "explicitly disavows any *Bivens* claims based on First Amendment retaliation, including his own." We agree.

The Court noted in *Egbert* that it has "never held that *Bivens* extends to First Amendment claims," and "a new context arises when there is a new constitutional right at issue." 142 S. Ct. at 1807 (cleaned up). The Court then held that several reasons, including "substantial social costs," "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties" and that this "'prospect of personal liability' under the First Amendment would lead 'to new difficulties and expense'" rendered Congress better suited than the Judiciary to fashion a damages remedy. *Id.* (citations omitted). So too here. We therefore affirm the district court's dismissal of Chambers' First Amendment retaliation claim.

## B

We next conclude that Chambers' Eighth Amendment failure to protect claim fails to state a claim under *Egbert*, 142 S. Ct. at 1803.

## 1

Chambers argues that his Eighth Amendment failure to protect claim does not represent a new *Bivens* context because it is like the existing *Bivens* actions in *Farmer v. Brennan*, 511 U.S. 825 (1994),[2] and *Carlson.* But

---

[2] The Supreme Court has never recognized *Farmer* as a *Bivens* action. We will not do so in the first instance. Even so, reliance on *Farmer* would fail. The alleged threat in *Farmer* was from other inmates, *see* 511 U.S. at 830–31, whereas the alleged threat here was from a prison

Chambers' claim differs from *Carlson* and thus represents a new *Bivens* context.

The Supreme Court in *Ziglar* articulated that even a modest extension of *Bivens* is a "disfavored judicial activity." 582 U.S. at 135. There, the Court held that a prisoner mistreatment claim against a warden presented a new *Bivens* context. *See id.* at 147–48. While acknowledging that the claim turned on a different constitutional right (Fifth Amendment) than *Carlson* (Eighth Amendment), the *Ziglar* claim presented a new context in part because the judicial guidance available to the warden was "less developed" than in *Carlson*. *Id.* at 148.

*Ziglar*'s logic commands dismissal here as well. Chambers asserts a claim premised on a failure to protect, but this is dissimilar to *Carlson*'s failure to provide medical care. This distinction is important because, just as in *Ziglar*, there is less judicial guidance regulating the defendants' alleged actions. *See* 582 U.S. at 148; *Chambers*, 2019 WL 4391135, at *9. There is no clear nor preexisting judicial guidance as to how an official visiting a prison must respond to a BOP-10 form she received from an inmate. And this lack of guidance risks disruptive judicial intrusion into prison administration because it may require an officer to

---

officer. Additionally, the "specificity of the official action," and the "extent of judicial guidance," *Ziglar*, 582 U.S. at 140, implicated by Chambers' claim are beyond the purview of *Farmer*. And a response to the alleged threat posed by Herrera would involve a different set of responses and considerations than in *Farmer*. Chambers cites no Supreme Court authority providing judicial guidance in the *Bivens* context on how prison officials should respond to alleged threats from employees against prisoners. These are "meaningful[] differen[ces]" that would present a new context from *Farmer*. *See Egbert*, 142 S. Ct. at 1803.

exceed his authority to act unilaterally, and thus risks altering a variety of prison procedures.  *See Chambers*, 2019 WL 4391135 at *9.

Additionally, the mechanism of injury in Chambers' claim is different than in *Carlson*.  *Carlson* relied on failure to provide adequate medical treatment, while this claim relies on a failure to protect Chambers against Officer Herrera.  No case has extended *Bivens* to claims that BOP employees violated the Eighth Amendment by failing to protect an inmate from other staff members.  Carlson also concerned specific actions taken against an individual inmate, whereas Chambers' failure to protect claim would impose *Bivens* liability for inaction.  *See* 446 U.S. at 16.

Chambers argues that these differences are not meaningful because his harm is ultimately caused by individual officials' acts or omissions.  But *Ziglar* instructs courts to ask not if the Supreme Court has recognized similar claims, but whether there are any "differences that are meaningful" between claims recognized by the Supreme Court and the claims at issue. 582 U.S. at 139.  Similarity alone does not suffice.  These distinctions create a new context for *Bivens* liability.

### 2

We similarly conclude that Congress is better suited than the Judiciary to construct a damages remedy.  Under *Egbert*, "[a] court faces only one question: whether there is any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'"  142 S. Ct. at 1805 (emphasis and citation omitted).  That reason exists here.

First, extending *Bivens* here would create a broad new source of liability for prison officials. Chambers admits as much, conceding that "extending a *Bivens* remedy is almost certainly going to impose some administrative burdens." This alone is enough to place it beyond the purview of the courts to create a remedy, because courts may not "independently assess the costs and benefits of implying a cause of action." *Id.*

Second, the Prison Litigation Reform Act (PLRA) ultimately provides Chambers the remedies available to him by Congress. *Egbert* highlighted that creation of a new cause of action is inherently legislative, not adjudicative, *see Egbert*, 142 S. Ct. at 1802, and therefore extending *Bivens* raises significant separation of powers concerns, *see Mejia*, 61 F.4th at 669. And the lack of a favorable remedy is immaterial to whether an alternative remedial structure exists that precludes judicial intervention under *Bivens*. *See Harper*, 71 F.4th at 1188. "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1807.

Here, the PLRA gives authority to the BOP, as part of the Executive Branch, to structure grievance procedures. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) (noting that rules "are defined not by the PLRA, but by the prison grievance process itself"). Therefore, just as we declined to second-guess Congress's establishment of remedies under the Civil Service Reform Act in *Harper*, we decline to

second-guess the remedial structure as set forth by the BOP here.[3]  71 F.4th at 1188.

Additionally, any decision by Congress or the Executive not to create an express Eighth Amendment failure to protect cause of action for prisoners, where it has legislated, suggests that they have decided against creating such an action.  These reasons constitute "*any* rational reason (even one) to think that Congress is better suited to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1805 (internal quotation marks omitted).  Chambers has no *Bivens* claim here.

C

We similarly conclude that Chambers has no Eighth Amendment excessive force claim under *Bivens*.

The district court dismissed Chambers' excessive force claims against Herrera and Velez with leave to amend. *Chambers*, 2019 WL 4391135, at \*10.  Because defendants did not move to dismiss these claims for lack of a *Bivens* remedy, the district court assumed without deciding that a *Bivens* remedy was available. *Id.* at \*10 n.11.  We conclude that Chambers has no relief under *Bivens* for this claim.

We agree with the district court that plaintiff's allegations, even taken as true, are too threadbare to allege an Eighth Amendment violation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when

---

[3] Chambers asserts that he has no remedy beyond damages for his harms because he is no longer incarcerated.  This makes no difference because Chambers could have (and in fact did) avail himself of the ability to file complaints against BOP staff while incarcerated.  That the alternative remedy existed at all is the factor we consider under *Egbert*, 142 S. Ct. at 1806–07.

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal citation omitted)).  Such a dismissal, especially for a pro se plaintiff, would normally be without prejudice.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

That said, in light of *Egbert*, we affirm the district court's dismissal on an alternative basis.  *See Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).  Because even plausible allegations could not constitute a *Bivens* claim for excessive force under *Egbert*, it is "absolutely clear" that amendment would be futile.  *Nordstrom*, 762 F.3d at 908 (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203–04 (9th Cir. 1988)).  Thus, while we affirm the dismissal, we reverse the district court and hold that the dismissal here should be with prejudice.

Chambers relies on *Carlson* to establish his claim under a preexisting context.  But Chambers' claim is distinguishable from *Carlson* yet again.  Unlike *Carlson*, which involved a deliberate indifference claim for inadequate medical attention, Chambers' claim here is rooted in excessive force.  It therefore represents a new *Bivens* context because it is distinct from the three actions recognized in *Bivens*, *Davis*, and *Carlson*.  Like with Chambers' failure to protect claim, it is not enough that *Carlson* was also brought under the Eighth Amendment because several *Ziglar* factors highlight that this claim presents a new context.  582 U.S. at 139–40.  These factors include: "the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating;" and "the risk of disruptive

intrusion by the Judiciary into the functioning of other branches." *Id.* at 140.

Because *Carlson* involved an entirely different claim, it provides no judicial guidance on how prison officials should handle excessive force claims. *See id.* Additionally, as Chambers concedes, he both was aware of the preexisting BOP prisoner grievance procedures and declined to use them. Therefore, for us to expand *Bivens* here would risk the exact "disruptive intrusion by the Judiciary" that *Ziglar* forecloses. *Id.*

Accordingly, Chambers again fails to meet the high burden of showing that no reason counsels against extending *Bivens*. *See Egbert*, 142 S. Ct. at 1805. As with his failure to protect claim, it is immaterial that Chambers did not prefer these remedies. *See id.* at 1807. Doing so would interfere with the administration of the federal prison system. *Id*. Congress also adopted the PLRA, authorizing BOP to establish grievance procedures for prisoner complaints, but without creating a damages remedy for Eighth Amendment excessive force claims. We decline to craft an action for damages when Congress could have done so but did not. Because several reasons counsel against it, we decline to extend *Bivens*.

## D

We lastly consider Chambers' *Bivens* Eighth Amendment deliberate medical indifference claim. Chambers alleges that after Herrera "assaulted" him, causing him to suffer a broken arm, Esquetini refused to treat Chambers to cover up the assault. According to Chambers, Esquetini refused to take x-rays for six weeks. Chambers asserts that this claim is viable under *Carlson*. The district court noted that Chambers failed to allege any facts about his

injuries, what examination or treatment (if any) he received before or after having x-rays, and the ultimate condition of his arm. *Chambers*, 2019 WL 4391135, at \*10. We agree with the district court that it is unclear from his complaint whether this *Bivens* claim is viable. *See id.* We cannot say at this stage that it is impossible that more detailed factual allegations could cure the deficiencies in his complaint under *Egbert*.

Apparently, in order to take this appeal, Chambers chose below not to amend his complaint. Given the less stringent standards we apply to pro se litigants, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), particularly as applied to a pro se plaintiff's factual allegations, *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989), we remand this claim to the district court to determine in its discretion whether Chambers may still attempt to amend his complaint in light of this decision.

If Chambers is permitted to amend and does so, the district court must still assess the viability of the new claim under *Egbert*. The claim would be the same constitutional right in *Carlson*. But the other *Egbert* factors would need to be addressed to determine whether this claim arises in a different context. True, we have said that new *Bivens* claims are "dead on arrival." *Harper*, 71 F.4th at 1187. While this claim, even as amended, may ultimately suffer the same fate, "mostly dead is slightly alive." PRINCESS BRIDE (20th Century Fox 1987). We leave it to the district court to address the potential merits of any amended claim in the first instance.

## V

Because Chambers' First Amendment retaliation and Eighth Amendment failure to protect *Bivens* claims present new contexts and Congress is better suited to create a

damages remedy, we affirm the district court's dismissal of these claims.  We also affirm the dismissal of Chambers' Eighth Amendment excessive force claim, but under *Egbert* that dismissal is with prejudice.  Lastly, we remand Chambers' medical indifference claim for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, VACATED AND REMANDED IN PART.**