**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERT A. STANARD, AKA Robert Allen Stanard, | No. 21-35582 |
| *Plaintiff-Appellant*, | D.C. No. 2:19-cv-01400-RSM |
| v. | |
| MARIA DY, Doctor, FDC SeaTac; DAN SPROUL, Warden, FDC SeaTac; K. MARTINEZ, Physician's Assistant, FDC SeaTac; MARY MITCHELL, Western Regional Director; IAN CONNERS, Administrator, National Inmate Appeals; LEEN, Health Services Administrator, FCI Sheridan; J. BALTAZAR, Western Regional Director; UNKNOWN PARTY, Medical Director of the FBOP; UNKNOWN PARTY, Regional Medical Director; MCDERMONT, Health Services Administrator, FDC SeaTac, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted March 30, 2023
Seattle, Washington

Filed December 11, 2023

Before:  Jacqueline H. Nguyen and Andrew D. Hurwitz,
Circuit Judges, and Dean D. Pregerson,[*] District Judge.

Opinion by Judge Pregerson

## SUMMARY[**]

### Prisoner Civil Rights/*Bivens*

In a *Bivens* action brought by Robert Stanard alleging that federal prison officials denied him treatment for Hepatitis C, the panel reversed the district court's dismissal of his claim that federal prison officials were deliberately indifferent to his medical needs in violation of the Eighth Amendment, and affirmed the district court's dismissal of his claim that federal prison officials discriminated against

---

[*] The Honorable Dean D. Pregerson, United States District Judge for the Central District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

him in denying him treatment because of his pre-trial status in violation of the Fifth Amendment Due Process Clause.

The panel reversed the district court's dismissal of Stanard's Eighth Amendment medical indifference claim. The panel held that the claim arose within an existing context as established in C*arlson v. Green*, 446 U.S. 14 (1980), which recognized a *Bivens* remedy against prison officials who were deliberately indifferent to an inmate's asthma. The panel rejected defendants' argument that *Carlson* was meaningfully different because the officials in *Carlson* acted so inappropriately as to evidence intentional maltreatment causing death, while the officials here denied Stanard care because of a Bureau of Prisons ("BOP") policy. Delaying treatment is an established example of deliberate indifference to a serious medical need, in violation of the Eighth Amendment. Even assuming Stanard received less deficient care than the inmate in *Carlson*, that difference in degree was not a meaningful difference giving rise to a new context. Moreover, Stanard was not simply challenging a broadly applicable BOP policy. His complaint alleged, among other things, that defendants relied on outdated medical records in refusing him treatment for Hepatitis C.

The panel affirmed the district court's dismissal of Stanard's Fifth Amendment claim. The panel held that the claim arose in a new context and special factors counseled hesitation against extending *Bivens* given that alternative remedial structures existed.

**COUNSEL**

Xiao Wang (argued), Assistant Professor of Law, University of Virginia Law School, Charlottesville, Virginia; Matthew Dickel, Taylor Hoffman, Elisabeth Logan, and Briana Singson, Certified Law Students, Northwestern University Pritzker School of Law Appellate Advocacy Center, Bluhm Legal Clinic, Chicago, Illinois; Samuel Weiss, Founder and Executive Director; Oren Nimni, Litigation Director; Rights Behind Bars, Washington, D.C.; for Petitioner-Appellant.

Tania M. Culbertson (argued) and Matt Waldrop, Assistant United States Attorneys; Nicholas W. Brown, United States Attorney, Western District of Washington, United States Attorney's Office, Seattle, Washington; for Defendants-Appellees.

**OPINION**

PREGERSON, District Judge:

Robert A. Stanard claims in this action that his Fifth and Eighth Amendment rights were violated by various federal prison officials when he was denied treatment for Hepatitis C. The district court dismissed Stanard's pro se complaint, finding that it failed to state a *Bivens* claim. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). We affirm as to Stanard's Fifth Amendment claim and reverse as to his Eighth Amendment claim.

## I. FACTUAL BACKGROUND[1]

Stanard contracted Hepatitis C Virus ("HCV") at a Bureau of Prisons ("BOP") facility in 2009. In November 2016, Stanard was arrested for being a felon in possession of a firearm and detained at Federal Detention Center SeaTac pending trial. Stanard declined HCV treatment during his first meeting with Dr. Maria Dy at SeaTac because he was suffering from a mental health crisis and, in his own words, "just wanted to die."

In January 2018, Stanard was found guilty of firearm possession and related charges. In February or March 2018, while still at SeaTac pending sentencing, Stanard started to seek treatment for HCV. He met with Dr. Dy again, who told him that he was "not qualified" for treatment at the time, based on his January 2 AST ("aspartate aminotransferase")-to-platelet ratio index ("APRI") of 0.41.[2] On March 2, Stanard submitted a BP-8, a Bureau of Prisons informal complaint form, requesting HCV treatment. He did not receive a response. When Stanard followed up with his counselor, he was told to fill out another BP-8. Stanard submitted the second BP-8 on April 3. His counselor responded on May 13, rejecting Stanard's request for treatment because he was "treatment Priority Level 3 and a pre-trial inmate[.] [BOP] is currently focusing on treating

---

[1] Because this is an appeal from an order granting a motion to dismiss, we assume the truth of the facts alleged in the complaint. *See Pettibone v. Russell*, 59 F.4th 449, 450–51 (9th Cir. 2023).

[2] In November 2017, Stanard's APRI was 0.6. It later rose to 2.51 but went back down to 0.41 by January 2, 2018. A higher APRI generally corresponds to more advanced or severe HCV complications. An APRI above 2.0 is indicative of advanced liver damage.

designated Priority 1&2 Level inmates. You will continue to be monitored accordingly."

Stanard began the formal complaint process by filing a BP-9 form ("Request for Administrative Remedy") on May 15. Stanard complained of abdominal pain. He had just witnessed the decline and death of a fellow inmate from untreated HCV, and was worried that "without a valid course of treatment I will die at a much quicker rate than normal[]." The Warden denied Stanard's BP-9 request on May 22, noting that Stanard was "treatment Priority Level 3 and a pre-trial inmate." On May 30, 2018, Stanard appealed the Warden's decision by filing a BP-10 ("Regional Administrative Remedy Appeal Form") with the regional medical director. On September 28, before receiving a response to his appeal, Stanard was transferred to Federal Correctional Institution ("FCI") Sheridan.

Because he had not received a response to his BP-10, Stanard filed a BP-11 ("Central Office Administrative Remedy Appeal Form") on October 7, 2018. He saw a doctor at FCI Sheridan on November 19, and again requested HCV treatment. The doctor told Stanard he would receive HCV treatment after "a short wait." Responses to Stanard's BP-10 and BP-11 forms came on December 6 and November 13, respectively. In both responses, the BOP concluded that Stanard was receiving adequate care in spite of any delay in or denial of HCV treatment. Stanard began HCV treatment at FCI Sheridan in November or December 2018. By May 2019, midway through his treatment, Stanard's lab tests no longer detected HCV.

## II. PROCEDURAL HISTORY

Stanard filed a pro se complaint in the Western District of Washington on August 30, 2019. His operative first

amended complaint ("Complaint") sought damages under Bivens, alleging that various BOP officials (1) were deliberately indifferent to Stanard's medical needs, in violation of the Eighth Amendment prohibition against cruel and unusual punishment, and (2) discriminated against him in denying treatment because of his "pre-trial" status, thus violating the Fifth Amendment Due Process clause.

A magistrate judge recommended that the district court grant the defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim. The magistrate judge concluded that Stanard's claims would extend *Bivens* into a new context, and that special factors counseled against granting such extension. The magistrate judge also concluded in the alternative that Stanard had failed to plausibly allege an underlying constitutional violation. At most, the judge reasoned, Stanard had alleged "a difference of opinion concerning proper medical care."

The district court agreed that Stanard's claims arose in a new *Bivens* context and that special factors counseled against extension of a *Bivens* remedy, and granted the motion to dismiss without addressing the validity of Stanard's underlying constitutional claims. This appeal followed.

## III. STANDARD OF REVIEW

We review the grant of a Rule 12(b)(6) motion de novo. *Bain v. Cal. Teachers Ass'n*, 891 F.3d 1206, 1211 (9th Cir. 2018) (citation omitted).

## IV. DISCUSSION

In *Bivens*, the Supreme Court held that a plaintiff could seek monetary damages for violation of his Fourth Amendment rights by federal agents. 403 U.S. at 397. The

availability of damages "should hardly seem a surprising proposition," the Court reasoned, given that damages were "regarded as the ordinary remedy for an invasion of personal interests in liberty." *Id.* at 395-96. Eight years later, the Court held that a damages remedy was also "surely appropriate" for a suit against a Congressperson for alleged violations of Fifth Amendment Due Process. *Davis v. Passman*, 442 U.S. 228, 245 (1979). The following year, the Court again recognized a *Bivens* damages remedy in a suit against federal prison officials alleging deliberate indifference to medical needs in violation of the Eighth Amendment. *Carlson v. Green*, 446 U.S. 14, 20 (1980).

In a series of subsequent decisions, however, the Court repeatedly declined to further expand the scope of *Bivens*. In *Bush v. Lucas*, it held that a federal employee could not claim damages when his superiors allegedly violated his First Amendment rights, reasoning that "Congress is in a better position to decide whether or not the public interest would be served by creating" such a remedy. 462 U.S. 367, 390 (1983); *see also Chappel v. Wallace*, 462 U.S. 296 (1983); *United States v. Stanley*, 483 U.S. 669 (1987); *Schweiker v. Chilicky*, 487 U.S. 412 (1988); *FDIC v. Meyer*, 510 U.S. 471 (1994); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001); *Wilkie v. Robbins*, 551 U.S. 537 (2007) (all declining to extend a *Bivens* remedy). In 2009, the Court summarized its recent jurisprudence by noting that *Bivens* actions were "implied," and therefore "disfavored." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Citing separation-of-powers principles, the Court has not extended *Bivens* relief to previously unrecognized contexts. *See Ziglar v. Abbasi*, 582 U.S. 120, 133-34 (2017); *Egbert v. Boule*, 596 U.S. 482, 498 n.3 (2022).

We have recently observed that, after the Supreme Court's decision in *Egbert v. Boule*, most claims seeking to extend *Bivens* are "dead on arrival." *Harper v. Nedd*, 71 F.4th 1181, 1187 (9th Cir. 2023). But recognizing that "mostly dead is slightly alive," *Chambers v. C. Herrera*, 78 F.4th 1100, 1108 (9th Cir. 2023), we turn to analysis of Stanard's claims.

## A. THE *BIVENS* FRAMEWORK

The first step in a *Bivens* analysis is to determine whether a case presents a new *Bivens* context. *See Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). "If the answer to this question is 'no,' then no further analysis is required." *Lanuza v. Love*, 899 F.3d 1019, 1023 (9th Cir. 2018) (citation omitted).

If the case does present a new context, we then must determine whether "special factors" indicate that the Judiciary is less equipped than Congress to weigh the costs and benefits of extending the *Bivens* remedy to this new context. *Hernandez*, 140 S. Ct. at 743; *see also Ziglar*, 582 U.S. at 140 ("The Court of Appeals [] should have held that this was a new *Bivens* context. Had it done so, it would have recognized that a special factors analysis was required before allowing this damages suit to proceed.").

In *Egbert*, the Supreme Court observed that the "new context" and "special factors" steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492. But our post-*Egbert* cases nonetheless continue to "apply a two-step framework, asking first whether the claim arises in a new context, and second, if so, whether other special factors counsel hesitation against

extending *Bivens*." *Harper¸* 71 F.4th at 1185 (citation omitted).

## B. THE EIGHTH AMENDMENT CLAIM

A *Bivens* claim arises in a new context if it differs "in a meaningful way from previous *Bivens* cases." *Ziglar*, 582 U.S. at 139. Here, the parties agree that *Carlson* provides the starting point for the "new context" analysis. In *Carlson*, the Court recognized a *Bivens* remedy against prison officials who were deliberately indifferent to an inmate's asthma. 446 U.S. at 16 n.1. Against the advice of doctors, the inmate was detained at a corrections facility with "gross[ly] inadequa[te]" medical facilities. *Id.* When he suffered an asthma attack, no doctor was on duty and none was called in. *See Green v. Carlson*, 581 F.2d 669, 671 (7th Cir. 1978). Instead, after some delay, a medical training assistant attempted to use a broken respirator on the inmate. *Id.* When the inmate pulled away from the respirator and told the assistant it was making his breathing worse, the assistant administered an antipsychotic medication. *See id.* The inmate went into respiratory arrest and died. *Id.*

The Defendants argue that meaningful differences between this case and *Carlson* mean that Stanard's case arises in a new context. Specifically, Defendants argue, the officials in *Carlson* acted "so inappropriate[ly] as to evidence intentional maltreatment causing death," while the officials here denied Stanard care because of a BOP policy. *Green*, 581 F.2d at 675 (citing district court).

Although there is no definitive list of how meaningful differences must be to create a new *Bivens* context, precedent provides a starting point. *Ziglar*, the first case in which the Supreme Court articulated the new context inquiry, provided a non-exhaustive series of considerations,

including the rank of the officers involved, the constitutional right at issue, the generality or specificity of the official action, the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted, and the statutory or other legal mandate under which the officer was operating. 582 U.S. at 139-40. We examine each below.

### 1. Severity of Mistreatment

Defendants argue that Stanard's case arises in a new context because the medical care he received was less flagrantly deficient than in *Carlson*. They assert that Stanard was merely denied "the treatment he wanted on the schedule he preferred."

First, we disagree that Stanard's claims amount to a mere scheduling preference for elective care. As Stanard indicated in his repeated communications to Defendants, HCV is a life-threatening                                    disease. (https://www.cdc.gov/hepatitis/hcv/index.htm).        When Stanard was denied treatment, Defendants did not offer him some alternate timeline by which he would receive necessary care. Instead, they repeatedly informed Stanard that he would not receive *any* HCV treatment at SeaTac at all. It was only after Stanard transferred to another facility that he received appropriate care. Delaying treatment is an established example of deliberate indifference to a serious medical need, in violation of the Eighth Amendment. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).

Second, even assuming that Stanard received less deficient care than the inmate in *Carlson*,[3] that difference in degree is not a meaningful difference giving rise to a new context. Stanard seeks a damages remedy for failure to provide medical attention evidencing deliberate indifference to serious medical needs. "Along every dimension the Supreme Court has identified as relevant to the inquiry," Stanard's case is a "replay" of *Carlson*. *Hicks v. Ferreyra*, 965 F.3d 302, 311 (4th Cir. 2020).

### 2. Existence of BOP Policy

Defendants also argue that, unlike the inmate in *Carlson*, Stanard is challenging a broadly applicable BOP policy governing HCV treatment protocol in federal prisons, rather than a non-policy based pattern of neglect. Defendants warn of the potential systemwide impacts of allowing an inmate to bring challenges to BOP medical policies with which the inmate does not agree.

Even if challenging BOP policy carries a risk of "disruptive intrusion by the Judiciary into the functioning of other branches," *see, e.g.*, *Pettibone*, 59 F.4th at 455, Defendants' argument mischaracterizes Stanard's claims.[4]

---

[3] To the extent that Defendants argue that their conduct was not "serious enough" deprivation to support a claim for Eighth Amendment relief we decline to reach the issue. The district court did not rule on the plausibility of Stanard's Eighth Amendment claim, choosing instead to rule only on *Bivens* liability.

[4] Defendants also accuse Stanard of "shift[ing] his argument on appeal" by recharacterizing his position from one that challenges BOP policy to one that challenges individual instances of deliberate indifference. But we must construe Stanard's pro se complaint liberally. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (The "pro se document is to be liberally construed…and must be held to less stringent standards than formal

Stanard is *not* simply challenging the constitutionality of a broadly applicable BOP policy. His complaint alleges that the defendants "relied upon" outdated medical records in refusing him care, including an APRI score that was eight years old, and asserts that that Defendants exhibited indifference by ignoring his reports or inaccurately dismissing him as a pre-trial inmate. The core of his complaint concerns the actions and state of mind of Defendants in denying him HCV treatment. Stanard is not, therefore, simply challenging a broadly applicable BOP policy. *See, e.g.*, *Johnson v. Wright*, 412 F.3d 398, 404 (2d Cir. 2005) ("The operative question in this case is not whether [the prison system's Hepatitis C policy] is generally justifiable, but whether a jury could find that the *application* of the policy in plaintiff's case could have amounted to deliberate indifference to plaintiff's medical needs.") (emphasis added).

Because Stanard's Eighth Amendment claims arise within an existing context, we need not proceed to the special factors inquiry. *See Ioane v. Hodges*, 939 F.3d 945, 952 n.4 (9th Cir. 2018). The district court decision to the contrary is **REVERSED**.

## C. THE FIFTH AMENDMENT CLAIM

Stanard claims Defendants violated his Fifth Amendment rights by disparately treating pre-sentencing and post-sentencing inmates with no rational basis. There is little doubt that Stanard's Fifth Amendment claim does present a new context.

_____

pleadings drafted by lawyers."); Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice.").

The Supreme Court has only recognized a *Bivens* remedy for Fifth Amendment violations in the context of gender-based employment discrimination. *Davis*, 442 U.S. at 230. Many of the factors listed by the Supreme Court counsel that this is a new context, including the statutory or legal mandate under which defendants were operating (the Civil Rights Act's mandate against gender discrimination versus no applicable federal law prohibiting discriminating against pre-trial inmates) and the category of defendants (a member of Congress versus prison officials). *See Pettibone*, 59 F.4th at 455; *Malesko*, 534 U.S. at 68.

Because Stanard's Fifth Amendment claim arises in a new context, it must pass through the unforgiving special factors inquiry. *Pettibone*, 59 F.4th at 455. To survive this step, Stanard must show that no special factors indicate that Congress is "at least arguably" better suited to weigh the costs and benefits of allowing the damages action to proceed. *Egbert*, 596 U.S. at 492 (citation omitted). Alternative remedial structures are one such special factor. *Ziglar*, 582 U.S. at 137; *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018) ("Alternative remedial structures can take many forms, including administrative, statutory, equitable, and state law remedies.") (cleaned up); *Chambers*, 78 F.4th at 1106 (finding the BOP administrative remedy process constitutes an alternative remedial structure). Because Stanard's Fifth Amendment claims arise in a new context and alternative remedial structures exist, the District Court's dismissal of those claims is **AFFIRMED.**

**AFFIRMED IN PART AND REVERSED IN PART.**