**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

KEKAI WATANABE,

*Plaintiff-Appellant*,

v.

ESTELA DERR; K. ROBL, Mr.;
NIELSEN, Nurse; KWON, Dr.,

*Defendants-Appellees*.

No. 23-15605

D.C. No.
1:22-cv-00168-
JAO-RT

OPINION

Appeal from the United States District Court
for the District of Hawaii
Jill Otake, District Judge, Presiding

Argued and Submitted February 14, 2024
University of Hawaii Manoa

Filed September 6, 2024

Before: Richard A. Paez, Milan D. Smith, Jr., and Lucy H.
Koh, Circuit Judges.

Opinion by Judge Paez;
Partial Concurrence and Partial Dissent by Judge M. Smith

## SUMMARY[*]

### *Bivens*

The panel reversed the district court's dismissal of a *Bivens* action brought by Kekai Watanabe, incarcerated at Federal Detention Center, who alleged that his Eighth Amendment rights were violated when the medical staff were deliberately indifferent to his serious medical needs.

Watanabe alleged that after he sustained severe injuries from an assault, the prison nurse treated him with over-the-counter medication for his pain instead of transporting him to a hospital or permitting him to be examined by a specialist.

The panel held that Watanabe's claim does not present a new *Bivens* context—it is not meaningfully different from the cases in which the Supreme Court has implied a damages action against federal officials for violating the Constitution—and therefore the district court erred in dismissing his *Bivens* claim. His claim is in all meaningful respects identical to *Carlson v. Green*, 446 U.S. 14 (1980), where the Supreme Court recognized an implied damages cause of action under the Eighth Amendment against prison officials who acted with deliberate indifference to an incarcerated individual's serious medical needs. Accordingly, the panel reversed and remanded so that Watanabe's *Bivens* claim could proceed.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel construed Watanabe's request for injunctive relief related to his ongoing medical care as claims not under *Bivens*, but rather as standalone claims for injunctive relief, and remanded to the district court to address in its discretion whether Watanabe may amend his request for injunctive relief and to address any claim for injunctive relief in the first instance.

Concurring in part and dissenting in part, Judge M. Smith dissented as to the reinstatement of Watanabe's *Bivens* claim because his claim is meaningfully different than *Carlson* and therefore presents a new *Bivens* context. Judge M. Smith concurred in the majority's decision to remand to the district court Watanabe's claim for injunctive relief.

---

**COUNSEL**

D. Dangaran (argued), Sophie Angelis, and Samuel Weiss, Rights Behind Bars, Washington, D.C., for Plaintiff-Appellant.

Dana A. Barbata (argued) and Harry Yee, Assistant United States Attorneys; Clare E. Connors, United States Attorney, District of Hawaii; United States Department of Justice, Office of the United States Attorney, Honolulu, Hawaii; for Defendants-Appellees.

# OPINION

PAEZ, Circuit Judge:

Kekai Watanabe ("Watanabe"), an incarcerated individual at Federal Detention Center ("FDC") Honolulu, was brutally assaulted during a gang-related fight in July 2021. Watanabe sustained severe injuries, and he later learned that his coccyx had been fractured and bone chips had entered the surrounding soft tissue. Instead of transporting him to a hospital or permitting him to be examined by a specialist, the nurse at FDC Honolulu treated him with nothing more than over-the-counter medication for his pain.

Watanabe filed this damages action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,[1] alleging that his Eighth Amendment rights were violated when the medical staff at FDC Honolulu were deliberately indifferent to his serious medical needs. While a *Bivens* remedy—i.e., an implied damages remedy against federal officers for violating the Constitution—exists, the Supreme Court has approved of such a claim in only three cases. *See Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017) (describing the three cases). One of those cases is *Carlson v. Green*, 446 U.S. 14 (1980), where the Court recognized an implied damages cause of action when prison officials failed to provide adequate medical treatment in violation of the Eighth Amendment. And while the Court has cautioned

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), established that a violation of a citizen's constitutional rights by a federal officer can give rise to a federal cause of action for damages.

against extending *Bivens* remedies to new contexts, it has consistently maintained that the three recognized cases are still good law. *See, e.g.*, *Ziglar*, 582 U.S. at 131 (recognizing three "instances in which the Court has approved of an implied damages remedy under the Constitution itself"); *see also Egbert v. Boule*, 596 U.S. 482, 490–91 (2022) (iterating the Court's reluctance to recognize new causes of action under *Bivens*, but nonetheless acknowledging that three *Bivens* causes of action exist, including the one articulated in *Carlson*).

Considering this backdrop, when a plaintiff brings a *Bivens* claim, we must apply a two-step inquiry. First, we ask whether a "case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 139–40). If the case does not present a new context, we need not proceed to the second step, as "no further analysis is required." *Lanuza v. Love*, 899 F.3d 1019, 1023 (9th Cir. 2018).

Here, because Watanabe's claim is identical to *Carlson* in all meaningful respects, we need not consider the second step. Watanabe alleges he suffered deliberate medical indifference while incarcerated, in violation of the Eighth Amendment's proscription against cruel and unusual punishment. *Carlson* dealt with the exact same issue. *See* 446 U.S. at 17–18. The district court thus erred in dismissing Watanabe's Eighth Amendment claim, and we accordingly reverse and remand so that his claim can proceed.

## I.   Factual and Procedural Background[2]

On July 12, 2021, a gang riot broke out in Unit 5A at FDC Honolulu, where individuals with rival gang affiliations were housed. Watanabe was sitting at a table in Unit 5A when he was attacked by multiple members of a rival gang during the riot and was beaten with an improvised weapon known as a "lock in a sock."

As a result of the beating, Watanabe sustained serious injuries. He and other individuals involved in the incident were sent to solitary confinement units. Prison officials documented Watanabe's "known and visible injuries" and put him on sick call. That evening, Watanabe requested to be seen by medical staff. At that time, Watanabe described his headache and other severe pain he was experiencing to two correctional officers.

Several days later, Watanabe was seen by Defendant Francis Nielsen ("Nielsen"), a staff nurse at FDC Honolulu. Medical records reflect that Watanabe told Nielsen he was experiencing severe back pain, rating the pain as a "10." Watanabe alleges that Nielsen told him "to stop being a cry baby." When Watanabe requested treatment at a hospital, Nielsen refused, replying: "[Y]ou are not going to the hospital."

Watanabe alleged that he was kept in solitary confinement for more than two months after the July 12 incident. During that period, he submitted multiple requests for medical attention. Watanabe was not taken to a hospital

---

[2] We take the factual background from the allegations in the First Amended Complaint, the operative complaint.

during this time, and to the extent he was treated, he was only given over-the-counter pain medication.

Around seven months later, in February 2022, Watanabe was finally diagnosed with a fractured coccyx, and an x-ray revealed that bone chips had migrated and entered the surrounding soft tissue. At that point, prison officials agreed to send Watanabe to be treated by a specialist.[3]

Watanabe filed his original complaint pro se in the district court, alleging that four officials at FDC Honolulu, including Nielsen, violated his Eighth Amendment rights. He sought monetary damages and injunctive relief directing the warden of FDC Honolulu "to follow United States law regarding the housing of federal inmates." Reviewing the complaint under 28 U.S.C. § 1915, the district court dismissed the majority of Watanabe's claims, but allowed his claim against Nielsen to proceed and granted him leave to amend.

Watanabe filed a First Amended Complaint ("FAC") supplementing his allegations and again seeking damages. He did not explicitly renew his claim for injunctive relief. The district court, upon reviewing the pro se complaint under § 1915, dismissed the FAC in part, again allowing only the claim against Nielsen to proceed. Nielsen filed a motion to dismiss the claim against him for failure to state a claim, which the district court granted, concluding that "Watanabe cannot pursue his claim against Nielsen under *Bivens*" because "no such *Bivens* remedy exists" for Watanabe's Eighth Amendment claim. Watanabe timely appealed.

---

[3] At the time of argument in February 2024, however, Watanabe's counsel stated that Watanabe still had not been treated by the specialist.

We have jurisdiction under 28 U.S.C. § 1291, and we review de novo the district court's grant of a motion to dismiss. *Chambers v. C. Herrera*, 78 F.4th 1100, 1103 (9th Cir. 2023). Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is appropriate only "if the complaint fails to allege 'enough facts to state a claim to relief that is plausible on its face.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).

## II.  Legal Framework

*Bivens* cases require a two-step inquiry. First, we must "ask whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 139–40). Factors to consider in analyzing whether the case presents a new context include:

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar v. Abbasi*, 582 U.S. at 139–40. If upon undertaking this analysis, we determine that the case does not present a

new context, "no further analysis is required." *Lanuza*, 899 F.3d at 1023.

Second, if we determine that the case *does* present a new context, we must then ask whether there "are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 136). If any reason exists "to think that Congress might be better equipped to create a damages remedy," we cannot recognize a new *Bivens* remedy. *Id.* at 492.

### III.   Bivens *Analysis*

Watanabe argues that because his claim is similar to *Carlson*, it falls within an established *Bivens* context and does not require proceeding to the second step of the analysis. Defendants argue that because Watanabe's claim "differs from prior *Bivens* cases in a meaningful way," it presents a new context and requires further analysis under the second step. Defendants additionally contend that, at the second step, Watanabe's claim fails because Congress has "provided alternative remedial processes for [Watanabe] to vindicate his claim."

Importantly, this appeal is from an order dismissing Watanabe's FAC under Federal Rule of Civil Procedure 12(b)(6). At this stage in the proceeding, Watanabe only needs to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 672, 678 (2009). We are therefore required to accept Watanabe's well-pleaded allegations as true. *See id*. Thus, we emphasize that we do not make any determinations as to the *merits* of Watanabe's claim—rather, we are only concerned with whether the

allegations, on their face, present a claim that is sufficiently analogous to the one in *Carlson*.

Watanabe is correct that his claim does not present a new *Bivens* context.  For the reasons discussed below, the district court erred in dismissing his claim.

## A.  Eighth Amendment Claim

In *Carlson*, the Supreme Court recognized an implied cause of action under the Eighth Amendment against prison officials who acted with deliberate indifference to an incarcerated individual's serious medical needs.  446 U.S. at 16 n.1.  There, Jones, an inmate in a federal correctional center, died after having an asthma attack.  *Id.*  At the time of his asthma attack, "no doctor was on duty and none was called in."  *Stanard v. Dy*, 88 F.4th 811, 816 (9th Cir. 2023) (citing *Green v. Carlson*, 581 F.2d 669, 671 (7th Cir. 1978)).

Prison officials kept Jones in the "facility against the advice of doctors," failed to "give him competent medical attention for some eight hours" after the asthma attack, administered antipsychotic drugs that worsened his condition, and failed to transfer him to an outside hospital. *Carlson*, 446 U.S. at 16 n.1.  Jones's estate sued, alleging that "these acts and omissions" caused Jones's death, and that the prison officials were "deliberately indifferent to Jones's serious medical needs" in violation of the Eighth Amendment.  *Id.*  The Supreme Court recognized that such a scenario gave rise to a *Bivens* cause of action.  *Id.*

## B.  Step One Inquiry

The parties in this case agree that *Carlson* is the appropriate analogue to Watanabe's case.  To determine whether Watanabe's *Bivens* claim can proceed, we must first ask whether the case presents a "new context" from that

of *Carlson*. *Egbert*, 596 U.S. at 492. Although there exists "no definitive list of how meaningful differences must be to create a new *Bivens* context," the "non-exhaustive series of considerations" laid out in *Ziglar* provide a useful starting point. *Stanard*, 88 F.4th at 816. Analyzing Watanabe's claim under the *Ziglar* factors, it is clear that his claim does not meaningfully differ from *Carlson*.

### 1. *Ziglar Non-Exhaustive Factors*

The first factor is the rank of the officers involved. *Ziglar*, 582 U.S. at 139–40. The rank of the officials involved here is the same as in *Carlson*: Nielsen is a prison nurse just as one of the defendants in *Carlson*, William Walters, was a prison nurse. *Carlson*, 446 U.S. at 16 n.1; *Green*, 581 F.2d at 671. The second factor, "the constitutional right at issue," *Ziglar*, 582 U.S. at 140, is also the same as in *Carlson*: the right under the Eighth Amendment to be free from cruel and unusual punishment through deliberate medical indifference. And Watanabe's claim is also identical to *Carlson* with respect to the third factor, "the generality or specificity of the official action." *Id.* Watanabe alleged official action to the same degree of specificity as that alleged in *Carlson*—"acts and omissions" that were deliberately indifferent to Watanabe's serious medical condition. Such alleged official actions include the refusal to transport Watanabe to an outside hospital and the failure to provide him competent medical attention. *Carlson*, 446 U.S. at 16 n.1.

The fourth *Ziglar* factor is "the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted." 582 U.S. at 140. Here, judicial guidance as to how a Bureau of Prisons ("BOP") officer should respond to an inmate's serious medical

condition is significantly more developed than it was in *Carlson*. Nielsen was working as part of the BOP's medical staff, as were the defendants in *Carlson*. Thus, at the time of the incident in 2021, Nielsen would at least have had the judicial guidance from *Carlson*—i.e., that BOP medical staff cannot act with deliberate indifference to an inmate's serious medical needs—that has existed since the case was decided in 1980. *See* 446 U.S. at 14.

*Carlson*, however, is far from the only guidance that BOP medical staff would have to rely on in this case. There exists an abundance of judicial guidance arising from federal litigation of Eighth Amendment claims for deliberate medical indifference brought against state officials under 42 U.S.C. § 1983. This case law provides ample guidance to BOP officials about how to appropriately respond to the serious medical conditions of incarcerated individuals. *See, e.g.*, *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (concluding that incarcerated individual who brought a § 1983 claim alleging a violation of the Eighth Amendment for an untreated broken thumb "need not show his harm was substantial," and presented sufficient evidence that state prison officials were deliberately indifferent to his condition); *Colwell v. Bannister*, 763 F.3d 1060, 1069–70 (9th Cir. 2014) (holding that incarcerated individual had a claim under § 1983 for deliberate medical indifference where state prison officials denied his requests for cataract surgery, resulting in blindness in one eye).

The fifth factor, "the statutory or other legal mandate under which the officer was operating," *Ziglar*, 582 U.S. at 140, is the same here as in *Carlson*, as both sets of defendants were operating as BOP medical staff. And Watanabe's claim also does not meaningfully differ from *Carlson* with respect to the sixth *Ziglar* factor: "the risk of

disruptive intrusion by the Judiciary into the functioning of other branches." *Id.* This case does not present a risk of intrusion by the judiciary into the operations of the BOP any more than what *Carlson* already permits.

The final *Ziglar* factor asks about the "presence of potential special factors that previous *Bivens* cases did not consider." *Id.* The district court concluded that "although Watanabe's claim has some parallels to the claims in *Carlson*, the specifics of [his] allegations are dissimilar in both their 'nature and severity' from the facts in *Carlson*." As discussed below, because the nature and severity of Watanabe's claim do not meaningfully differ from the nature and severity of the claim alleged in *Carlson*, the district court erred in reaching this conclusion.

### 2. Nature

The district court determined that the "nature" of Watanabe's claim was meaningfully different from the claim in *Carlson*. The court characterized Watanabe's allegation as an "interfere[nce] with the proper diagnosis and treatment of his injuries by denying his request to be taken to the hospital," and distinguished this from the claim in *Carlson*, which the court characterized as "largely based on treatment provided to [Jones] during a medical emergency." On appeal, Nielsen reiterates this argument, stressing that Watanabe's claim is "about what Nielsen did not do"—i.e., an omission—whereas the *Carlson* claim was about "numerous overt actions."

This purported distinction based on the "nature" of the claims is unfounded. Watanabe alleges that Nielsen violated his Eighth Amendment rights through both overt acts and omissions. True, Watanabe contends that Nielsen violated his Eighth Amendment rights by failing to order that he be

transported to an outside hospital—but he *also* alleges that the on-site treatment he received (an overt act) was woefully inadequate.    Further, the district court incorrectly characterized *Carlson*, because Jones's estate similarly alleged both overt actions, such as the use of a "respirator known to be inoperative," *and* omissions, such as the delay "for too long a time [of Jones's] transfer to an outside hospital."    *Carlson*, 446 U.S. 16 n.1.    The nature of Watanabe's claim is thus functionally identical to the nature of the claim in *Carlson*.

Additionally, Nielsen's attempt to distinguish this case on the basis of the "nature" of the claim is unsupported by our precedent.  We have previously recognized that if denial of proper medical treatment—an "omission," according to the district court's characterization—is the underlying basis of a *Bivens* claim, it may proceed.

Indeed, in *Stanard v. Dy*, we held that an incarcerated individual's Eighth Amendment claim that prison officials denied him treatment for Hepatitis C did not present a new *Bivens* context, using *Carlson* as its analogue.  88 F.4th at 818.  There, Stanard did not allege any "overt action"— rather, he alleged that his rights were violated because prison officials continually denied his requests for treatment, showing a deliberate indifference to his serious medical needs.  *Id.* at 813–15.  Reversing the district court's dismissal order and holding that the claim did not arise in a new *Bivens* context, we explained that "[d]elaying treatment is an established example of deliberate indifference to a serious medical need, in violation of the Eighth Amendment."  *Id.* at 817 (citing *Jett*, 439 F.3d at 1096).

And in *Chambers v. C. Herrera*, the plaintiff alleged that prison officials failed to treat his broken arm and wrist for

six weeks. 78 F.4th at 1103, 1108. There, we characterized the claim in *Carlson* as the "failure to provide adequate medical treatment," *id.* at 1106, and concluded that the plaintiff's claim "would be the same constitutional right in *Carlson*," *id.* at 1108. Because the plaintiff was proceeding pro se and failed to allege certain facts, we concluded that it was "unclear from his complaint" whether his claim presented a new context and remanded to determine whether he could amend his complaint to allege additional facts. *Id.* We nonetheless preserved the possibility that his *Bivens* claim—failure to treat a broken arm for a period of time— could be viable as an analogue to *Carlson*. *Id.* ("The claim would be the same constitutional right in *Carlson*. But the other *Egbert* factors would need to be addressed. . . .").

Watanabe alleged that Nielsen's overt actions and omissions resulted in a violation of his Eighth Amendment rights, making the nature of his claim functionally identical to the nature of the claim in *Carlson*. But even if Watanabe had only alleged an omission—e.g., that his requests for treatment were repeatedly denied—his claim would still be one of deliberate medical indifference, a viable *Bivens* cause of action. In short, focusing on an overt action versus a failure to act misconstrues the required analysis. The nature of Watanabe's claim is virtually identical to the nature of the claim in *Carlson*: prison officials were deliberately indifferent to their respective serious medical needs. This kind of claim has long been recognized as one of the three *Bivens* causes of action. *See Egbert*, 596 U.S. at 490–91. The district court thus erred in distinguishing Watanabe's claim on this ground.

*3. Severity*

The district court also distinguished Watanabe's claim from *Carlson* on the basis that "the severity of Watanabe's claim does not compare to the seriousness of the claims in *Carlson*," reasoning that "[w]hile the pain that Watanabe experienced because of his fractured coccyx and bone chips is certainly regrettable, it is not akin to the medical emergency faced by the inmate in *Carlson* that ultimately resulted in that inmate's death." On appeal, Defendants emphasize this purported difference, arguing that "[t]he difference between [Watanabe's] alleged on-going pain management and the life-threatening condition in *Carlson* is meaningfully different."

The district court erred in drawing this conclusion, and Defendants' arguments in support of it are not persuasive. Most glaringly, this conclusion misconstrues the law. A plaintiff need not suffer death or a life-threatening injury for his claim to be sufficiently analogous to *Carlson*. In *Chambers*, we held that it could be possible for an incarcerated person to bring a viable *Bivens* claim where he had suffered a broken arm and was denied treatment. 78 F.4th at 1108. And in *Stanard*, we held that a *Bivens* claim for repeated denial of Hepatitis C treatment while incarcerated did not present a new context from *Carlson*. 88 F.4th at 817. In doing so, we reaffirmed that a plaintiff need not allege a harm as severe as the one in *Carlson*, noting that "even assuming [the plaintiff] received less deficient care than the inmate in *Carlson*, that difference in degree is not a meaningful difference giving rise to a new context," because the underlying harm was still a "failure to provide medical attention evidencing deliberate indifference to serious medical needs." *Id.*; *see also Jett*, 439 F.3d at 1098 (concluding that the prison officials' failure to treat the

plaintiff's broken thumb could constitute deliberate indifference to a serious medical condition).

As in *Stanard*, even if we assume that Watanabe received less deficient care than Jones in *Carlson*, this is not a meaningful difference. Watanabe was injured in July 2021, his injury resulted in a serious medical condition, and the condition has caused extreme pain ever since. He repeatedly complained about the pain to prison medical personnel, and he described the pain as a "10" on a scale from one to ten. It was not until seven months after his initial complaints that he was finally diagnosed with a fractured coccyx, and at the time he filed his complaint, over one year after the initial injury, he had still not seen a specialist.

Failure to respond to an incarcerated individual's serious medical need, even if that need is not technically life-threatening, can constitute deliberate indifference in violation of the Eighth Amendment. *See, e.g.*, *Jett*, 439 F.3d at 1096. The district court thus erred in concluding that Watanabe's claim differed meaningfully from *Carlson* on the basis that his claim was not as severe.

### 4. Alternative Remedial Programs

The district court further concluded that the existence of alternative remedial structures within the BOP constituted a "special factor" that weighed in favor of finding a new context. The court noted that the BOP's administrative remedy program[4] "was not considered by the Court in

---

[4] The Administrative Remedy Program was created "to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement," 28 C.F.R. § 542.10(a), and "applies to all inmates in institutions operated by the [BOP]," § 542.10(b). The program allows incarcerated individuals to "(1) present[] an issue of concern informally to staff," "(2) submit[] a formal request for administrative remedies to a

*Carlson*," and thus concluded that its existence offered "another reason that Watanabe's claim arises in a new context." The district court erred in this conclusion, as the existence of alternative remedial structures does not render this case a new context.

In *Egbert*, the Supreme Court clarified that the existence of alternative remedial structures can be one "special factor," to be considered at the *second* step of the *Bivens* analysis. 596 U.S. at 493, 498. Here, we are not required to undertake the second step of the analysis, because we conclude that Watanabe's case is not meaningfully different from *Carlson*, and thus does not present a new context. And even if we were to consider this factor at step one, we have previously held that a claim similar to Watanabe's does not present a new *Bivens* context, notwithstanding the fact that the incarcerated individual had access to and used the BOP's administrative complaint system. *See Stanard*, 88 F.4th at 814, 818.

\* \* \*

The dissent acknowledges that "Watanabe's claim is, at least superficially, similar to *Carlson*," but nonetheless concludes that "the distinctions" between the two are enough to create a new *Bivens* context. Dissent at 26. The dissent makes these distinctions improperly, however. Concluding that Nielsen's response was not as "flagrantly deficient" as the response in *Carlson*, for example, requires making an impermissible determination on the merits by weighing the evidence. Dissent at 24 (quoting *Stanard*, 88 F.4th at 817).

---

facility's warden," "(3) appeal[] to the appropriate Regional Director," and "(4) appeal[] to the BOP's General Counsel." *Cacayorin v. Derr*, No. CV 23-00077 JMS-WRP, 2023 WL 2349596, at \*3 (D. Haw. Mar. 3, 2023).

The dissent notes that "had Nielsen known of Watanabe's broken coccyx and nevertheless refused to send him to a hospital," the dissent may have reached a different outcome. Dissent at 24. But determining what Nielsen did or did not know requires us to evaluate and weigh the evidence, something we are not concerned with at this stage in the proceedings. Instead, we are concerned only with whether Watanabe's claim—consisting of allegations we presently take as true—falls within the same context as *Carlson*. *See Iqbal*, 556 U.S. at 678; *see also Stanard*, 88 F.4th at 817 ("[E]ven assuming that [the petitioner] received less deficient care . . . that difference in degree is not a meaningful difference [because the petitioner] seeks a damages remedy for failure to provide medical attention evidencing deliberate indifference to serious medical needs.").

In all meaningful respects, Watanabe's claim is functionally identical to the claim asserted in *Carlson*. The district court erred in proceeding to the second step of the *Bivens* analysis and dismissing Watanabe's claim. This case does not present a new *Bivens* context at step one, and thus "no further analysis is required." *Lanuza*, 899 F.3d at 1023.

## IV. *Injunctive Relief*

On appeal, Watanabe also contends that the district court erroneously dismissed his request for injunctive relief against the other defendants related to his ongoing medical care. Watanabe sought equitable relief in his original complaint, but the district court dismissed this claim with leave to amend. In his FAC, Watanabe did not specifically renew his claim for equitable relief and sought only monetary damages. The district court dismissed all of Watanabe's claims in the FAC without prejudice,

concluding that he could not bring claims for equitable relief under *Bivens*. At oral argument before this court, Watanabe's counsel represented that Watanabe had not yet received treatment from a specialist.

Before Watanabe obtained counsel for this appeal, he had proceeded pro se in the district court. We are "obligated to 'liberally construe' documents filed pro se." *Ross v. Williams*, 950 F.3d 1160, 1173 n.19 (9th Cir. 2020) (en banc) (cleaned up) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (1976)). This obligation means that "courts must frequently look to the contents of a pro se filing rather than its form." *Id.*; *see also Adams v. Nankervis*, 902 F.2d 1578 (9th Cir. 1990), at *2 ("We recognize that pro se litigants, especially prisoners, must be given special solicitude.").

Because we construe Watanabe's pro se filings "liberally," *see Ross*, 950 F.3d at 1173 n.19, we interpret his requests for injunctive relief as official capacity claims not under *Bivens*, but rather as standalone claims for equitable relief. On remand, he may request leave from the district court to clarify his claim for injunctive relief, and if warranted, seek appropriate injunctive relief. We thus remand to the district court to address in its discretion whether Watanabe may amend his request for injunctive relief and to address any claim for injunctive relief in the first instance.

## V. *Conclusion*

Watanabe alleges that prison officials were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. This is functionally identical to the context in *Carlson*, where the Supreme Court recognized an implied cause of action under the Eighth Amendment. The

district court thus erred in dismissing Watanabe's *Bivens* claim.

Accordingly, we REVERSE and REMAND for further proceedings consistent with this opinion.

---

M. SMITH, Circuit Judge, concurring in part and dissenting in part:

The Supreme Court has reminded us time and time again that "expanding the *Bivens* remedy is . . . a 'disfavored' judicial activity" and that "even a modest extension" of the remedy, to a new context or new category of defendants, "is still an extension." *Ziglar v. Abbasi*, 582 U.S. 120, 135, 147 (2017). Because Watanabe's claim is meaningfully different than *Carlson v. Green*, 446 U.S. 14 (1980), I respectfully dissent as to the reinstatement of his *Bivens* claim. I concur in the majority's decision to remand to the district court his claim for injunctive relief.

\* \* \*

In *Bivens v. Six Unknown Federal Narcotics Agents*, the Supreme Court held that a plaintiff could seek monetary damages for violation of his Fourth Amendment rights by federal agents. 403 U.S. 388, 397 (1971). Eight years later, the Court held that a damages remedy was also "surely appropriate" for a suit against a Congressperson for alleged violations of Fifth Amendment Due Process. *Davis v. Passman*, 442 U.S. 228, 245 (1979). The following year, the Court again recognized a *Bivens* damages remedy in a suit against federal prison officials alleging deliberate indifference to medical needs in violation of the Eighth Amendment. *Carlson*, 446 U.S. at 20.

In a series of subsequent decisions, however, the Court repeatedly declined to further expand the scope of *Bivens*. In *Bush v. Lucas*, it held that a federal employee could not claim damages when his superiors allegedly violated his First Amendment rights, reasoning that "Congress is in a better position to decide whether or not the public interest would be served by creating" such a remedy. 462 U.S. 367, 390 (1983); *see also, e.g.*, *Chappell v. Wallace*, 462 U.S. 296 (1983). In 2009, the Court summarized its recent jurisprudence by noting that Bivens actions were "implied," and therefore "disfavored." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Citing separation-of-powers principles, the Court has not extended *Bivens* relief to previously unrecognized contexts. *See Ziglar*, 582 U.S. at 135–36; *Egbert v. Boule*, 596 U.S. 482, 519 n.3 (2022).

The first step in a *Bivens* analysis is to determine whether a case presents a new *Bivens* context or a new category of defendants. *See Hernandez v. Mesa*, 589 U.S. 93, 102 (2020). "If the answer to this question is 'no,' then no further analysis is required." *Lanuza v. Love*, 899 F.3d 1019, 1023 (9th Cir. 2018) (citation omitted). If the case does present a new context, the court then must determine whether "special factors" indicate that the judiciary is "at least arguably less equipped than Congress to weigh the costs and benefits" of extending the *Bivens* remedy to this new context. *Egbert*, 596 U.S. at 492 (internal quotation marks omitted). In *Egbert*, the Supreme Court observed that the "new context" and "special factors" steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id*. But our post-*Egbert* cases nonetheless continue to "apply a two-step framework, asking first whether the claim arises in a new context, and second, if so, whether other special

factors counsel hesitation against extending *Bivens*." *Harper v. Nedd*, 71 F.4th 1181, 1185 (9th Cir. 2023) (citation omitted).

A *Bivens* claim arises in a new context if it differs "in a meaningful way from previous *Bivens* cases." *Ziglar*, 582 U.S. at 139. Here, the relevant *Bivens* case is *Carlson*. 446 U.S. at 20. In *Carlson*, the Court recognized a *Bivens* remedy against prison officials who were deliberately indifferent to an inmate's serious medical condition. *Id.* at 16 n.1. Against the advice of doctors, the inmate was detained at a corrections facility with "gross[ly] inadequa[te]" medical facilities. *Id.* When he suffered an asthma attack, no doctor was on duty, and no doctor was subsequently called in. Instead, after some delay, a medical training assistant tried to use a broken respirator on the inmate. When the inmate pulled away and said the respirator was making his breathing worse, the assistant administered an antipsychotic medication. *Id.* The inmate went into respiratory arrest and died. *Id.*

The Supreme Court's "understanding of a 'new context' is broad." *Hernandez*, 589 U.S. at 102. Although there is no definitive list of how meaningful differences must be to create a new *Bivens* context, precedent provides a starting point. *Ziglar*, the first case in which the Supreme Court articulated the new context inquiry, provided a non-exhaustive series of considerations, including "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; [and] the statutory or other legal mandate under which the officer was operating," among others. 582 U.S. at 139–40.

The Supreme Court has stated that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 589 U.S. at 103. Thus, even where a "case has significant parallels to one of the [Supreme Court's] previous *Bivens* cases," it can present a new context. *Ziglar*, 582 U.S. at 147.

Watanabe's Eighth Amendment *Bivens* claim presents a "new context." His claim is meaningfully different than *Carlson* when considering *in toto*: (1) the severity of the mistreatment and (2) the severity of the medical need.

First, the severity of Watanabe's mistreatment does not come close to that in *Carlson*. *See Stanard v. Dy*, 88 F.4th 811, 817 (9th Cir. 2023) (considering the "[s]everity of [m]istreatment" in determining whether plaintiff's *Bivens* claim arose in a new context). On July 16, 2021, few days after the riot, Nielsen met with Watanabe and performed a physical examination. The examination indicated that, although Watanabe appeared distressed and suffered from substantial pain, his results were within normal limits. Nielsen treated Watanabe accordingly: Nielsen spoke to an on-call provider who authorized an order for painkillers and anti-inflammatory drugs, encouraged gentle stretching exercises as tolerated, and made a note to follow-up with a sick call if necessary. This response was "less flagrantly deficient than in *Carlson*." *See id.* By contrast, had Nielsen known of Watanabe's broken coccyx and nevertheless refused to send him to a hospital for further care, this case would look closer to *Carlson*. *See id.* (noting that medical personnel "attempted to use a respirator *known* to be inoperative" (emphasis added)). But the record does not indicate, nor does Watanabe allege, that Nielsen knew, or should have known, the extent of Watanabe's injury at the

time of his evaluation. Absent such an allegation, and in light of the normal results of the physical examination, the prison's response here was meaningfully less severe.

The majority suggests that "even if we assume that Watanabe received less deficient care than [the plaintiff] in *Carlson*, this is not a meaningful difference" because (1) Watanabe's injury "resulted in a serious medical condition," which caused him extreme pain, (2) he described the pain as a ten on a scale from one to ten, and (3) it took seven months to diagnose him with a fractured coccyx. That Watanabe suffered from his injury without treatment is certainly regrettable. But the majority fails to articulate, as does Watanabe, how the prison should have known—without the benefit of hindsight—to send Watanabe to an outside hospital. As noted, his test results were normal. Does a *Bivens* claim arise every time a prison refuses to send an inmate for outside treatment if they report severe pain? Such a rule would violate the spirit of *Bivens* and its progeny.

Second, as the district court noted, Watanabe's medical need was less severe than that in *Carlson*, which resulted in that inmate's death. That is not to suggest that one needs to face a life-threatening condition to fall within *Carlson*. *See, e.g.*, *Chambers v. C. Herrera*, 78 F.4th 1100, 1108 (9th Cir. 2023) (treating medical indifference claim based on broken arm as "mostly dead" but "slightly alive"). But the difference in severity is meaningful and weighs in favor of finding a new context under *Ziglar*. *See* 582 U.S. at 147 ("[E]ven a modest extension is still an extension.").

The cases cited by the majority, where the *Bivens* claim survived, are distinguishable. *Cf., e.g.*, *Stanard*, 88 F.4th at 817 (remanding claim where plaintiff was repeatedly informed he "would not receive *any* . . . treatment at [the

prison] at all); *Chambers*, 78 F.4th at 1108 (remanding claim where physician's assistant knew of broken arm and intentionally refused to treat injury to cover up assault); *Jett v. Penner*, 439 F.3d 1091 (9th Cir. 2006) (lacking discussion of *Bivens*).  For the reasons above, the district court did not err in finding that Watanabe's case presents a new context.

Next, in step two of *Bivens*, the district court held that special factors counsel against recognizing a remedy.  The district court explained that it could not recognize a new *Bivens* remedy because "alternative remedies are available to Watanabe," including the Bureau of Prisons' alternative remedial program and the Federal Tort Claims Act. Watanabe does not challenge this part of the decision on appeal.  In his brief, he states: "*Bivens* remedies may be available in 'new contexts' too. But as this appeal does not involve a new context, the circumstances that warrant an extension of *Bivens* are not discussed here."

* * *

Even a case that has "significant parallels to *Carlson*" may constitute an extension of *Carlson* to a new context.  *See Ziglar*, 582 U.S. at 147.  That is the case here.  Although Watanabe's claim is, at least superficially, similar to *Carlson*—i.e., brought pursuant to the Eighth Amendment involving an injury suffered in prison—the distinctions are "sufficient to make this a new *Bivens* context."  *See Harper*, 71 F.4th at 1186.   I respectfully dissent as to the reinstatement of Watanabe's *Bivens* claim.